Curtis W. SEARIGHT, Jr., Plaintiff,

v.

KAISER ALUMINUM AND CHEMICAL CORPORATION, Defendant.

No. 80 C 4245.

United States District Court, N.D. Illinois, E.D.

Dec. 19, 1984.

William J. Sneckenberg, William J. Sneckenberg & Associates, Ltd., Chicago, Ill., for plaintiff.

Roger J. McFadden, Thomas J. Dillon, Schuyler, Roche & Zwirner, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

This case involves an age discrimination claim brought by Curtis Searight, Jr. against his former employer, Kaiser Aluminum and Chemical Corporation. Searight's motion to amend his complaint to include a breach of contract claim and Kaiser's motion for summary judgment are currently pending before the Court. For the reasons stated in the following opinion, the Court denies both motions.

*Plaintiff's Motion for Leave to File an Amended Complaint*

After examining plaintiff's proposed amendment based upon an alleged breach of contract, the Court denies plaintiff's motion. Although an amendment under rule 15(a) to state a new claim will generally be allowed, C. Wright & A. Miller, Federal Practice and Procedure § 1474 (1971), the trial court may properly deny leave to amend the pleadings when the amendment would not withstand a motion to dismiss. *Massarsky v. General Motors Corp.*, 706 F.2d 111, (3d Cir.) cert. denied, 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983); *see Shashoua v. Quern*, 612 F.2d 282 (7th Cir.1979). Plaintiff's proposed breach of contract claim is clearly frivolous on its face and cannot withstand defendant's outstanding objections to the amendment or alternatively, its motion to dismiss.

The undisputed facts are that Searight was employed by Kaiser from September 1, 1956 to February 1, 1980. On March 1, 1960, during Searight's tenure, Searight and Kaiser entered into an agreement, ("Agreement"), attached hereto as Appendix A. Searight's proposed amendment is based upon the Agreement.

Essentially, the Agreement provides: 1) that Kaiser would continue to employ Searight as long as both parties mutually agreed to the employment and; 2) that any and all trade secrets or inventions, etc., which Searight conceived or made during his employment would be Kaiser's property. The Agreement further provided that Searight would not disclose such secrets or inventions during or subsequent to his employment without Kaiser's consent. Searight contends that since the Agreement contemplates lifetime performance by him, *i.e.*, not to disclose trade secrets or inventions, that the contract should also be construed to provide lifetime employment for him, unless it is "mutually agreed" that Searight be terminated. Searight argues that the following language of the Agreement also permits such a conclusion:

IT IS MUTUALLY AGREED AS FOL-LOWS:

1. Employer employs and shall continue to employ Employee at such compensation and for such a length of time as shall be mutually agreeable to Employer and Employee.

The balance of the Agreement essentially provides for non-disclosure of trade secrets and inventions and makes the Agreement retroactive to the date on which Searight began his employment.

This language of the Agreement and Searight's lifetime promise not to disclose trade secrets cannot, as a matter of law, provide Searight with any breach of contract claim. In the first place, in Illinois an employment relationship is understood to be terminable at any time, with or without cause, by either party, unless a contract specifies a duration. *Atwood v. Curtiss Candy Co.*, 22 Ill.App.2d 369, 161 N.E.2d 355 (1959). However, the Agreement in the instant case did not alter the terminable at will employment relationship.

Under general principles of contract law and Illinois law, which the parties seem to agree governs this case, questions as to the meaning of an unambiguous contract can be appropriately decided upon a motion to dismiss. *Egger v. Phillips*, 710 F.2d 292

(7th Cir.1983). The preliminary question of whether an ambiguity exists is a question for the court to determine as a matter of law. *Joseph v. Lake Michigan Mortgage Co.*, 106 Ill.App.3d 988, 62 Ill.Dec. 637, 436 N.E.2d 663 (1982). The court must look to the works used in the contract to determine the intent of the parties. *E.g., Western Illinois Oil Co. v. Thompson*, 26 Ill.2d 287, 186 N.E.2d 285 (1962). Absent ambiguity, the words of the contract are generally the sole indicators of what the parties intended. *Sunstream Jet Express, Inc. v. International Air Service Co.*, 734 F.2d 1258, 1266–1270 (7th Cir.1984); *Ambarann Corp. v. Old Beu Coal Corp.*, 395 Ill. 154, 69 N.E.2d 835 (1946). In other words, a contract is ambiguous only if it is reasonably susceptible to different constructions when read in its plain and ordinary meaning. *Susmano v. Associated Internists of Chicago, Ltd.*, 97 Ill.App.3d 215, 52 Ill.Dec. 670, 422 N.E.2d 879 (1981). These principles of contract construction are applicable to employment contracts as well as other types of contracts. *Goodman v. Board of Trustees of Community College, Etc.*, 511 F.Supp. 602, 605 (N.D.Ill.1981).

Applying these principles to the case at bar, the Court finds that the Agreement can have only one meaning: If either party no longer desires the employment to continue, the employment would no longer be "mutually agreeable" and could be terminated by either party. The Court concurs with the well-reasoned opinion of Chief Judge Haden in *Murray v. Kaiser Aluminum & Chemical Corp.*, 591 F.Supp. 1550 (S.D.W.Va., 1984), interpreting identical language, wherein the court held the contract to be terminable at will, finding that any other construction of the "mutually agreeable" language would be tortured, untenable and a *reductio ad absurdum*. *Id.* at 1553. (See Exhibit A to Defendant's Response to Plaintiff's Motion for Leave to File Amended Complaint).

Moreover, the Court does not find persuasive the authority cited by plaintiff wherein Illinois courts have implied a term of duration into an instrument to avoid the terminable at will doctrine. In the two

cases cited by plaintiff either the nature of the Agreement or particular language in the Agreement clarified the parties' intentions regarding duration. In *Ricke v. Ricke*, 83 Ill.App.3d 1115, 39 Ill.Dec. 598, 405 N.E.2d 351 (1980), the court found that the term of a lease could be implied from another provision in the agreement providing for exercise of an option. The option provision, the court found, made the parties' intent as to duration clear. Similarly, in *Adkisson v. Ozment*, 55 Ill.App.3d 108, 12 Ill.Dec. 790, 370 N.E.2d 594 (1977), the court found that absent a clear provision regarding duration in an agreement to supply water at certain rates, the supplying city could raise rates after furnishing water at the contractual rate for 18 years.

In the same vein, *Martin v. Federal Life Insurance Co.*, 109 Ill.App.3d 596, 65 Ill. Dec. 143, 440 N.E.2d 998 (1982) and *Smith v. Board of Education of Urbana School District No. 116 of Champaign*, 708 F.2d 258 (7th Cir.1983), simply indicate that in certain circumstances courts will enforce lifetime oral employment agreements supported by consideration other than an employee's services. In the instant case, plaintiff does not allege the existence of a lifetime oral employment agreement based upon additional consideration so as to bring himself within the holding of such cases. *Rao v. Rao*, 718 F.2d 219 (7th Cir.1983) is also distinguishable from the facts of the instant case for it deals with the law surrounding restrictive covenants which are not alleged to be a part of this case.

For the foregoing reasons the Court finds that plaintiff's proposed breach of contract amendment could not withstand a motion to dismiss. Therefore, plaintiff's motion to amend his complaint to include such a claim is denied.

### Defendant's Motion For Summary Judgment

After reviewing the affidavits and deposition testimony, the Court finds that there are genuine issues of material fact precluding summary judgment.

▪ The standard for granting summary judgment in an age discrimination case is clear:

1. The plaintiff must set forth a prima facie case to raise an inference of discrimination, *Huhn v. Koehring Co.*, 718 F.2d 239 (1983); *Kephart v. Institute of Gas Technology*, 630 F.2d 1217 (7th Cir.1980). To set forth a prima facie case, plaintiff must show: (a) that he belongs to the protected class; (b) that he was qualified for the position; (c) that he suffered an adverse employment decision, and (d) that the employer sought to replace him. *Huhn*, 718 F.2d at 239.

2. Once the plaintiff sets forth a prima facie case, the burden shifts to the employer to articulate a justification for the adverse employment decision. *Id.*[1]

3. Once the employer articulates a justification for his decision, the employee must then prove that the justification was merely a pretext—that, but for his age, he would not have been terminated. The employer need only articulate justification for his decision, thus the ultimate burden of proof remains at all times with the employee. *Id.*

▪ Applying the standards set forth in *Kephart* and *Huhn* to the instant case, the Court finds that summary judgment must be denied. Plaintiff has pled an employment history of 23 years and a recent history of satisfactory performance appraisals sufficient to establish a prima facie case. The employer, through the affidavit of C. Jerry Bills, articulated a host of reasons for its adverse employment decision, for example, that plaintiff continually arrived late and left early, that plaintiff caused disruption in Region 6, that the vice presi-

---

1. In *Kephart v. Institute of Gas Technology*, 630 F.2d 1217 (7th Cir.1980), the Seventh Circuit noted that the soundness of the employer's expectations should not be scrutinized by the court. The ultimate issue is whether the employee was discriminated against because of age. Therefore, the court found that an inquiry into whether the employment decision reflected proper business judgment was in error.

dent of Inland Steel, a customer of Kaiser, had been highly critical of plaintiff, and that plaintiff failed to monitor the "Detrick Company problem." Although many of the facts underlying these reasons are in dispute, a more significant fact forces the Court to deny summary judgment. It is uncontested that Bills, plaintiff's supervisor, referred to Searight and older employees as "old farts" or "O.F.'s" (Def. Reply Memorandum pp. 10–11). Such a categorization suffices to show that plaintiff's supervisor may have had an age-related animus hostile to older individuals, thereby supporting a pretext theory, *i.e.*, that the employer's termination of plaintiff was due not to dissatisfaction with plaintiff but to an age-related animus. *See Scofield v. Bolts & Bolts Retail Stores*, 21 FEP 1478, 1480 (S.D.N.Y.1979) (discharged employee made out a prima facie case of age discrimination in view of testimony that employer's store manager referred to her and another employee as "the old women"); *see also Mistretta v. Sandia Corp.*, 15 FEP 1690 (D.N.M.1977), *aff'd in relevant part*, 639 F.2d 600 (10th Cir.1980). The foregoing evidence thus raises a genuine issue of material fact.

### Conclusion

In accordance with the foregoing opinion, Plaintiff's Motion to Amend the Complaint is denied. Defendant's Motion for Summary Judgment is denied.

### APPENDIX A

### EXHIBIT A

### AGREEMENT

This Agreement, entered into this 1st day of March, 1960, by and between Kaiser Aluminum & Chemical Sales, Inc., a corporation of the State of California, (hereinafter called the "Employer"), and C.W. Searight, Jr. (hereinafter called the "Employee").

### WITNESSETH:

Whereas Employer desires to employ and to continue to employ Employee and confirm its right to certain inventions of Employee and in recognition of the fact that during said employment Employee may acquire a knowledge of apparatus or of processes used by Employer or of products made by Employer and that knowledge or information may be extended to or gained by Employee in confidence, and that Employee may in the discharge of various duties in which he is occupied devote time and service to invention, discovery and/or to improvement of products, machinery, apparatus, equipment, methods and processes whether chemical, physical or mechanical, relating to or connected with the business, work and/or investigations of Employer and/or any of its subsidiaries or affiliates IT IS MUTUALLY AGREED AS FOLLOWS:

1. Employer employs and shall continue to employ Employee at such compensation and for such a length of time as shall be mutually agreeable to Employer and Employee.

2. Any and all inventions, discoveries and improvements which Employee has conceived or made, and/or may conceive or make, during the period of his said employment, relating to employer's business or arising out of or resulting from his said employment shall be the sole and exclusive property of Employer or its nominee.

3. Employee, whenever requested by Employer, will execute any and all instruments which Employer may deem necessary to assign and convey to it, its successors or assigns, the sole and exclusive right, title and interest in and to any such inventions, discoveries and improvements, and Letters Patent for same, or such other interests therein as Employee may possess or acquire, together with all instruments deemed necessary by Employer in order to apply for and obtain Letters Patent of the United States and/or foreign countries therefor; and Employee agrees that such obligation to execute any such instruments shall continue after the termination of his employment. All expenses of applying for and obtaining Letters Patent when autho-

rized by Employer to be done shall be borne by it.

4. Employee shall not disclose or use, directly or indirectly at any time, either during or subsequent to the said employment, any secret or confidential information, knowledge or data of Employer or of any of its affiliated companies (whether or not obtained, acquired or developed by Employee), unless he shall first secure the written consent of Employer.

5. This Agreement shall be binding upon the parties hereto, their heirs, executors, administrators, successors and assigns as the case may be.

6. This Agreement shall supersede all previous agreements by and between Employer and Employee and shall be retroactive to the date on which Employee commenced his employment.

/s/ C.W. Searight, Jr.
Employee
KAISER ALUMINUM &
CHEMICAL SALES, INC.
By _____