THOMAS O. PETTY, Plaintiff-Appellant, v. DALE CADWALLADER *et al.*, Defendants-Appellees.

Fourth District   No. 4—84—0846

Opinion filed August 15, 1985.

TRAPP, J., dissenting.

Mark T. Petty, of Arcola, for appellant.

William J. Warmoth, of Brainard, Bower & Kramer, of Charleston, for appellees.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

Plaintiff, Thomas O. Petty, a loan broker, filed suit in the circuit court of Coles county on August 22, 1984, against defendants, Dale Cadwallader and Judy Cadwallader, alleging breach of contract for

failure to pay the entire fee due to plaintiff for the work he did in procuring a farm loan for them. Defendants, residents of Indiana, filed a special and limited appearance pursuant to section 2—301 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—301) claiming that the Illinois courts lacked jurisdiction over them as the complaint failed to allege that they were ever in Illinois or transacted business here. The circuit court granted the motion and quashed the summons served on each of the defendants. Plaintiff appeals and we reverse.

Plaintiff, in his complaint, alleges that he received a telephone call from defendant, Dale Cadwallader, at his office in Oakland, Coles County, Illinois, requesting him to travel to the defendants' residence to discuss a loan application with them. The complaint does not indicate the location of the residence. Although it is not mentioned in the complaint, it is undisputed that defendants resided in Cass County, Indiana.

The complaint further alleges that plaintiff and defendants then entered into an agreement whereby plaintiff would procure a loan commitment for defendants secured by farmland and defendants would pay plaintiff $8,250 for his efforts.

Plaintiff alleges that subsequent to entering into the agreement with defendants, he performed his obligations under the contract by preparing various applications, reports, appraisals and financial statements and making telephone calls and sending letters from his office in Coles County, Illinois, and "as a result" secured a commitment by Travelers Insurance Company for a loan which was made to the defendants. Finally the complaint alleged that defendants have only paid plaintiff $3,000 and have refused to pay more despite the fact that he has performed all of his obligations under the contract.

Plaintiff contends that the circuit court of Coles County obtained jurisdiction of the persons of defendants by the terms of the "long-arm" provisions found in section 2—209(a) of the Code of Civil Procedure, which states in part:

> "(a) Any person, whether or not a citizen or resident of this State, who in person *or through an agent* does any of the acts hereinafter enumerated, thereby submits such person, *** to the jurisdiction of the courts of this State as to *any cause of action arising from the doing of any of such acts*:
>
> (1) *The transaction of any business within this State*." (Emphasis added.) Ill. Rev. Stat. 1983, ch. 110, par. 2—209(a).

The determination of long-arm jurisdiction in Illinois is not limited to the mere inquiry as to whether the "minimum contacts" test of *In-*

*ternational Shoe Co. v. Washington* (1945), 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154, has been met. Our supreme court has held that the standards under the Illinois long-arm statute are more stringent than Federal due process standards (*Green v. Advance Ross Electronics Corp.* (1981), 86 Ill. 2d 431, 436, 427 N.E.2d 1203, 1206). Rather, the due process standard represents only an outer limit beyond which a State may not go in obtaining personal jurisdiction over a nonresident, and a State is free to set narrower standards within these limits. (*Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 197, 429 N.E.2d 847.) Therefore, even though a defendant may have engaged in conduct giving rise to "minimum contacts" with this State, personal jurisdiction of the defendant is not obtained unless the statutory standards are met.

Two cases cited by the plaintiff, in which long-arm jurisdiction was found where the defendants never entered Illinois and merely initiated contact with the plaintiff either via telephone or letter, were decided prior to *Green* and *Cook Associates*; thus, their decisions were based solely on minimum contacts analysis.

In *AAAA Creative, Inc. v. Sovereign Holidays, Ltd.* (1979), 76 Ill. App. 3d 514, 395 N.E.2d 66, the president of defendant corporation telephoned from New York the plaintiff's corporate president who happened to be in Europe at the time. A contract was entered into at that time in which plaintiff Illinois corporation agreed to accept a photographic assignment to be performed in France providing receipt in its corporate office in Chicago of an advance fee and a written shooting assignment. The court held that minimum contacts were established with Illinois in that: (1) The defendant entered into a contract with an Illinois corporation; (2) the formation of the contract occurred in Chicago upon the receipt of payment and written assignment there; and (3) the fee was to be paid in Illinois. Thus, the defendant voluntarily invoked the protections of the State of Illinois.

The other case was *First Professional Leasing Co. v. Rappold* (1974), 23 Ill. App. 3d 420, 319 N.E.2d 324. Rappold was a California resident who contacted plaintiff corporation in Illinois for the purpose of leasing equipment. The lease contract was executed in Illinois when it was signed in plaintiff's offices; the contract was pledged to an Illinois bank; payments were remitted to plaintiff in Illinois; and defendant signed an Illinois security agreement. Again, minimum contacts with the State were found.

In the instant case, there are no allegations that (1) the contract between the parties was formed in Illinois; (2) the fees were to be paid in Illinois; (3) the ultimate loan transaction took place in Illinois

or involved an Illinois resident or Illinois land, or (4) the protection of the State of Illinois was intended to be invoked by defendants as they invited plaintiff to Indiana to negotiate and form their contract. Clearly, the conduct of defendants in merely making a telephone call to plaintiff in Illinois asking plaintiff to come to Indiana to discuss defendants engaging him to procure a loan did not constitute the transaction of business in Illinois by defendants.

However, once the contract between plaintiff and defendants became effective, plaintiff became the agent of defendants for some purposes. The complaint alleged that plaintiff was a "broker" and after performing certain tasks he secured a commitment for a loan which was later made to defendants. The tenor of the complaint is that plaintiff, as a "loan broker," negotiated the offer of the loan for defendants' acceptance. By doing so, he became more than a "finder." (*Business Development Services, Inc. v. Field Container Corp.* (1981), 96 Ill. App. 3d 834, 842, 422 N.E.2d 86, 93.) As broker for defendants, plaintiff became an agent of defendants for the purposes of obtaining the loan commitment. *City of Chicago v. Barnett* (1949), 404 Ill. 136, 88 N.E.2d 477; *Buzzard v. Bolger* (1983), 117 Ill. App. 3d 887, 453 N.E.2d 1129; see also Restatement (Second) of Agency sec. 54 (1958).

■■ Section 2—209(a) of the Code of Civil Procedure refers to the "transaction of any business within this State" whether done "in person or through an agent," and the section subjects the person to the jurisdiction of the Illinois courts for causes of action "arising from" such transaction of business. The cause of action here arose from the contract between the parties and plaintiff's subsequent obtaining of the loan commitment. The complaint indicates that the activities of plaintiff in Illinois in sending out letters and documents and making phone calls included plaintiff's correspondence with Travelers Insurance Company, which issued the commitment and made the loan. Thus, plaintiff transacted business in Illinois, which gave rise to the cause of action which is the subject of this suit.

As plaintiff was acting as an agent on behalf of defendants in transacting the foregoing business within this State, his transaction of that business would seem to be the transaction of business by defendants. The trial court concluded that such reasoning "would distort the meaning of the statute," because plaintiff "was not their agent for the purpose of submitting to the jurisdiction of the State." We recognize that the question is complicated but we cannot agree with the trial court. For an agent to submit his principal to the jurisdiction of the courts of this State under the provisions of section 2—209(a), the

agent need have neither express nor implied authority from the principal to do so. Rather, the agent must have the express or implied authority of the principal to perform the acts which give rise to the submission to the jurisdiction. Here, the record indicates that defendants would have anticipated that plaintiff would be likely to contact lenders by telephone or mail from his office in Illinois and impliedly consented that he do so. If express or implied authority to the agent to submit the principal to the jurisdiction of our courts was required, most principals would expressly deny that authority to their agents and thus prevent the operation of section 2—209(a) except when they personally transacted business within the State.

If the "transaction of business" test was met here, the minimum contacts test was clearly met.

■ It is important to note that the "long arm" jurisdiction which is obtained over a defendant as to a "cause of action arising from \*\*\* [t]he transaction of any business within this State" under the terms of section 2—209(a) of the Code of Civil Procedure differs from the jurisdiction obtained over a foreign corporation by virtue of its "doing business" in the State as developed by case law (see *Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 200, 730 N.E.2d 847, 851) under the "doing business" doctrine. Under the latter doctrine, mere "solicitation by employees who have only authority to solicit" is insufficient to confer jurisdiction and a certain permanency in the activity is required. (*Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 201, 203, 730 N.E.2d 847, 851, 853.) No such limitations have been placed on the "transaction of any business" requirement of section 2—209(a).

Accordingly, we reverse the judgment quashing the summons and remand to the circuit court of Coles County for further proceedings.

Reversed and remanded.

WEBBER, J., concurs.

JUSTICE TRAPP, dissenting:

I would affirm the trial court. The opinion agrees that this purported contract was entirely made in Indiana and that the loan was to be made in Indiana pursuant to Indiana law.

The theory of a broker form of agency is strained, for the plaintiff could not execute any contract for the loan, and could not commit the defendant to make or complete the loan. The record shows that the defendant did not have any business contact in Illinois, and that the

agreement between plaintiff and defendant did not contemplate that defendant would ever have business activity in Illinois. Plaintiff could only solicit loan commitments.

In *Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 429 N.E.2d 847, the supreme court expressly rejected the view, here adopted by the majority, that an executive search organization's activities in Illinois brought a Massachusetts corporation within the jurisdiction of this State. See also *Colnar v. Baldknobbers, Inc.* (1982), 107 Ill. App. 3d 234, 437 N.E.2d 718.

In *Cook*, the court noted that doing business in Illinois required more than solicitation by an employee who only has authority to solicit. The opinion notes that doing business for jurisdictional purposes requires a " 'fair measure of permanence and continuity.' " (*Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 203, 429 N.E.2d 847, 853.) The majority opinion disregards the principles of *Cook*. I dissent.